UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-62018-CIV-DIMITROULEAS/Snow

ALDAR TOBACCO GROUP, LLC,
a Florida limited liability company,
DAVID GIELCHINSKY, and PHOENIX
TOBACCO, INC.,

        Plaintiffs,

v.

AMERICAN CIGARETTE COMPANY, INC.,
a Florida corporation, and
BASIL E. BATTAH, individually

        Defendants.
_____/

## REPORT AND RECOMMENDATION

      THIS CAUSE is before the Court on the Plaintiff, Aldar Tobacco Group, LLC's

Expedited Motion to Strike Petersen's Notice of Charging Lien and Request for Jury Trial (DE 272),

Second Request by Petersen for Evidentiary Hearing(s) on Charging Lien (DE 285), and Motion of

Charging Lienor Byron G. Petersen, P.A. to Compel Plaintiffs and Robert Gielchinsky[1] to Disclose

Terms of Settlement (DE 286), which were referred to United States Magistrate Judge, Lurana S.

Snow for report and recommendation pursuant to 28 U.S.C. §636(b).  An evidentiary hearing was

held on July 12, 2012.  The Court has considered the evidence presented, the parties papers and the

applicable law.

## I. RELEVANT BACKGROUND

      The Plaintiffs, represented by Byron Petersen, P.A. (Petersen), filed a twenty-four

(24) count Complaint in this Court against the Defendants in December of 2008. (DE 1)  On June

---

[1]  The Court notes that Robert Gielchinsky, a managing member of Aldar Tobacco, is not
himself a Plaintiff in this action.

17, 2009, the Court granted the Defendant's motion to dismiss all seven federal claims, and because the Court declined to exercise jurisdiction over the remaining State law claims, the Complaint was dismissed without prejudice in its entirety.  (DE 38)  The Plaintiffs filed an amended complaint containing twenty-five (25) counts on July 8, 2009.(DE 39)  The federal claims were again dismissed (DE 88) and the Plaintiffs were given a final chance to amend.  The twenty-five (25) count Second Amended Complaint was filed on May 24, 2010.  (DE 95) The Defendants filed their Answer with a Third Party Complaint and Counterclaim on June 22, 2010.  (DE 107) The Court set the case for trial for the two week calendar commencing on June 6, 2011 in front of the Honorable Adalberto Jordan.  (DE 121) At calendar call, the Court set a tentative trial date of July 18, 2012  (DE 200), and on July 13, 2011, the Plaintiffs' attorney, Petersen moved to withdraw. (DE 205)  The Court granted Petersen's motion to withdraw citing a bar complaint filed by Robert Gielchinsky and his wife against Mr. Petersen alleging grave misconduct, and continued the trial date in order to give the Plaintiffs an opportunity to retain new counsel. (DE 215).  On September 6, 2011, Petersen filed the Notice of Charging Lien at issue.[2] (DE 229) Plaintiffs' new counsel entered appearances on September 20, and 27, 2011. (DE 232 and 233)  The case settled at calendar call before the Honorable William P. Dimitrouleas on April 20, 2012. (DE 268) The Court approved the parties' Stipulation of Dismissal Without Prejudice (DE 269) and reserved jurisdiction to enforce the terms of the settlement and adjudicate the charging lien. (DE 270)

## II. THE MOTIONS

The Plaintiff, Aldar Tobacco moves to strike Petersen's charging lien on the grounds that Aldar and Petersen entered into an oral contingency fee agreement in this case, and since Petersen withdrew from his representation of the Plaintiffs prior to the advent of the contingency,

---

[2] Judge Jordan adopted the Recommendation of Magistrate Judge Bandstra that the Motion for Fees in connection with the Notice of Charging Lien be denied without prejudice to be renewed at a later date if the resolution of this case resulted in a recovery for the Plaintiffs. (DE 246 and 248)

he has waived any claim to his fees.  Petersen contends that the fee agreement was a deferred hourly fee arrangement.[3]  In other words, Petersen would be paid his reasonable hourly fee from the recovery with the balance to be paid by the Plaintiff, guaranteed by Gielchinsky personally, if the recovery was not enough to fully compensate him.  Petersen claims, without documentation, that he is owed approximately $300,000.00 in accrued fees plus interest. In connection with his charging lien, Petersen has filed a motion to compel the Plaintiffs and Robert Gielchinsky to disclose the terms of the settlement in this case, and a motion for an evidentiary hearing on his charging lien.

### III. EVIDENCE PRESENTED

The Plaintiff called three witnesses in support of its motion to strike Petersen's charging lien.  The first was Byron Petersen who was called as an adverse witness. Mr. Petersen testified that he is an attorney and has a litigation practice.  He was admitted to the Florida Bar in 1976.

Petersen testified that Robert Gielchinsky was a good friend and client.  He represented Gielchinsky in another matter (the Vibo litigation) in Circuit Court.  According to Petersen, it was in that case that the conflict arose necessitating his withdrawal from this case. Petersen testified that he took the Vibo case on a contingency basis.  The case settled for $7.7 million, but only $225,000.00 of the settlement was in cash, the rest was an assignment of brand rights.  He received his costs in that case, but does not recall ever being paid his fees.

Petersen denied telling his paralegal, Tina Broder that he wanted to create a conflict so that he could withdraw from this case and still collect his fee.  He admitted discussing the fee dispute with her, and stated that he fired her over a disagreement about his treatment of Robert Gielchinsky.  Ms. Broder's Affidavit was admitted into evidence as Exhibit 2.

---

[3]  Whatever agreement they had, the parties appear to agree that there was no formal written retainer agreement.

3

Petersen stated that he filed the instant case along with another attorney, and negotiated the fee with Robert Gielchinsky.  He testified that he took the case on an hourly basis, and that he has time records, but did not bring them with him to the hearing.  The written fee agreement is in the form of nine e-mails. The e-mails were sent to Robert Gielchinsky only, not to any of the other Plaintiffs.  Petersen testified that he could not locate any replies to the e-mails.   He did not recall whether he ever sent the client hourly time sheets.  If he sent billing records, they would have gone to Robert Gielchinsky.  Petersen did not recall if he prepared a fee affidavit regarding his services. He stated that he believed the other attorneys representing the Plaintiffs in this case were doing so without charge.  Petersen testified that he estimates Plaintiffs owe him $300,000.00. He conceded that he did not file any objections to Magistrate Judge Bandstra's January 27, 2012 Report and Recommendation, which recommended his prior motion for fees in this case be denied without prejudice.

The Plaintiffs' Exhibit 3, an e-mail sent by Petersen to the bankruptcy trustee in his personal bankruptcy, was admitted into evidence.  The statement to the trustee, which comprises amounts owed to the Petersen law firm, lists this case and others as contingency fee cases.

Petersen was given an opportunity to comment on any evidence elicited during direct examination.  He stated that the motion to withdraw in the Vibo case was for cause, and necessitated his withdrawal from all of the Plaintiff's other cases, including this one. The statement to the bankruptcy trustee was submitted a year before the instant case was filed.  Petersen stated that he may have thought at that time that  this case was going to be on a contingency fee basis, but changed his mind,  or simply  knew that his fees would not be paid prior to recovery.  He did not object to Judge Bandstra's Report and Recommendation because its recommendation was based on the fact that a fee determination was premature, and he did not think it necessary to do more work at that time.  Finally, Petersen testified that he is disadvantaged because he does not know what the terms of the Plaintiffs' recovery are in this case.

4

The Plaintiffs next called Christina Broder, who testified that she has been a certified paralegal for the past 18 years, and worked for Petersen between June 2009 and August 2011. While employed by Petersen, she paid all of the bills and, if asked, created fee agreements and billing statements.

Ms. Broder stated that when she started working for Petersen, he had between seven and ten matters pending with Gielchinsky, one of which was this case. Petersen told her that each of the Gielchinsky matters was non-billable and on a contingency basis. Petersen did have clients who were billed hourly, and in those cases she used an online billing system. Petersen used written retainer agreements when he billed hourly, some of which he prepared, and others she prepared. Ms. Broder testified that she did not know if there was a retainer agreement in this case. The only contingency case with a written agreement that Ms. Broder knew of was the Vibo case.

Ms. Broder next testified about her dispute with Petersen. After the Vibo case settled, Petersen asked her to prepare a charging lien. She stated that she did not feel comfortable doing so because there was no dispute with the client over fees at that time, and no reason to believe that Petersen would not get paid. Petersen told her that he needed to find a conflict with the client so that he could file the lien and protect his life's work. When Ms. Broder told Petersen that she was going to contact the Florida Bar for an opinion on this issue, he told her he was going to foreclose on the brand and make sure Gielchinsky never saw a dime.

On cross examination, Ms. Broder reiterated that the case was taken on a contingency basis, plus costs. Petersen never told her what percentage of the recovery he was entitled to under the agreement. When presented with the e-mail excerpts that Petersen contends evidence his hourly fee agreement, Mr. Broder stated that she did not know if she had seen them before, although she was aware that Petersen had sent e-mails to Gielchinsky about getting paid.

Ms. Broder testified that when the Vibo case settled, Gielchinsky proposed entering into a global settlement regarding Petersen's fees in all pending matter,s using the proceeds from the

Vibo case. Petersen wanted 15% in the brand instead. Ms. Broder stated that she informed Petersen that, according to the Florida Bar, he could not ethically take an ownership interest in property as part of a contingency.

Ms. Broder further testified that it was she who terminated the work relationship with Petersen. She conceded that Petersen asked her for copies of e-mails, but she did not provide them because she believed he had back-ups. Also, Ms. Broder was uncomfortable going to Petersen's office after she quit, owing to Petersen's erratic behavior.

Ms. Broder filed a complaint with the Florida Bar against Petersen, but had not been urged to do so by Gielchinsky. On re-direct, she explained that when she called the bar hotline and reported Petersen's statements about taking over the brand and making sure Gielchinsky never saw a dime, she was advised that she had to file a grievance or risk being held accountable as a co-conspirator.

Robert Gielchinsky testified next. He stated that he has been in the business of importing and distributing tobacco products for 20 years. His relationship with Petersen began when Petersen represented him in litigation concerning a repair to his pool. They developed a personal relationship, and Mr. Gielchinsky helped Petersen with a lot of personal issues, including Petersen's break-up with his partner, and some mental health issues. Mr. Gielchinsky stated that he has executed both contingency and hourly fee agreements and understands the difference between the two.

Mr. Gielchinsky testified that Petersen persuaded him to let Petersen look into the Vibo case, which was being handled by another attorney. At first, Gielchinsky paid Petersen a monthly stipend of approximately $3,333.00, but the agreement was changed to a 15% contingency after Petersen persuaded him to fire the other attorney. When the Vibo case settled after eight or nine years, Mr. Gielchinsky's understanding was that Petersen would be entitled to 15% of the

$225,000.00 proceeds less a $24,000.00 credit.[4]   Petersen was disappointed in the settlement however,  and persuaded Gielchinsky to modify the agreement to 15% of the cash award plus 15% of the revenue stream.  The Vibo case is currently on appeal, however, and everything has been delayed.

Next, Mr. Gielchinsky described how Petersen refused to sign off on the settlement in Vibo until he was ordered by Judge Venzer to do so or face a contempt citation.  In spite of this, Gielchinsky stated he did not think the relationship had yet become adverse. Before Petersen signed off on the settlement, he wrote a letter to the Defendant's counsel, which was introduced as part of Plaintiffs' Exhibit 8, stating that while Petersen hoped he was not becoming adverse to his clients, he could not consent to the agreement, and warning the Defendants that they should not do anything to impair or delay enforcement of his firm's lien rights. Petersen indicated he would explore whether documents could be signed and exchanged and then held in escrow, however he would only do so if he believed such an arrangement to be appropriate from a business standpoint.

Mr Gielchinsky stated that this case was always on a contingency basis, although the percentage Petersen would receive was never clear.  He stated that he assumed Petersen knew Gielchinsky would be fair, as he always had been.

On cross examination, Mr. Gielchinsky testified that there was no discussion about brand rights in the Vibo case until the end of the litigation when they realized that the cash recovery would not be large.  It was Mr. Gielchinsky's idea to modify the agreement to include a percentage of the revenue stream.

Mr. Gielchinsky further testified that Petersen bombarded him with e-mails trying to modify all of the contingency agreements to hourly contracts. The only time he did not respond to

---

[4]   This amount comprised the monthly stipends Petersen was paid before he took over the Vibo case.

Petersen's e-mails was when they became repetitive. When asked when the rift between attorney and client occurred, Mr. Gielchinsky stated that it was when Petersen demanded that the settlement funds be frozen, although he still did not think the relationship was irreparable.  Mr. Gielchinsky testified that the first bar grievance against Petersen was filed by his wife in connection with the litigation concerning his pool.  He filed his own bar complaint in August or September of 2011, after Petersen was granted leave to withdraw in this case.

## IV. RECOMMENDATIONS OF LAW

In Florida, "a charging lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, et al., 428 So.2d 1383, 1384 (Fla. 1983).  The requirements for the perfection of a charging lien are not found in the statutes; rather they have been developed over the course of the last century in case law.  Id.   There are four requirements for a valid charging lien; a contract, either express or implied, between the attorney and client; an understanding between the parties, either express or implied, that payment is either dependent upon recovery, or that payment will come from the recovery; an attempt to avoid the payment of fees, or a dispute as to the amount involved; and timely notice. Id. at 1385. Proceedings in Florida to resolve a charging lien for legal services are equitable in nature.  Buckley Towers Condominium, Inc. v. QBE Insurance Corporation, 2012 WL 573784  at *7 (S.D. Fla. 2012) (citing Nichols v. Kroelinger, 46 So.2d 722 (Fla. 1950)).  Therefore, equitable defenses, such as unclean hands, may be asserted. Id.

Generally, the equitable remedy of enforcing a charging lien in the original action is preferred to a proceeding at law for the collection of fees.  Id.  However,  for the notice to be timely, "a charging lien must be filed before the lawsuit has been reduced to judgment or dismissed pursuant to settlement." Levine v. Gonzalez, 901 So.2d 969, 974 (Fla. 4th DCA 2005).   Proper notice is necessary to perfect the lien. Baker & Hostetler, LLP v. Swearingen, 998 So.2d 1158, 1161 (Fla. 5th

DCA 2008).  This typically occurs before the outcome of the case is known unless jurisdiction to address the issue of attorney's fees is properly reserved by the trial court.  Id.  A failure of timely notice is fatal to a claimed attorney's charging lien.  Scutieri v. Estate of Revitz, 829 F.Supp. 387, 392 (S.D. Fla. 1993).

Petersen's lien was filed shortly after his withdrawal as the Plaintiffs' attorney and before this case was settled. It therefore was timely filed. The parties appear to agree that they had an informal contract for the payment of Petersen's fees.  However, they dispute the nature of the agreement, and therefore, the amount Petersen is due in connection with his representation of the Plaintiffs in this case.

For purposes of addressing the Plaintiff's motion to strike Petersen's charging lien, the Court must first determine whether the fee arrangement between the Plaintiff and Petersen was on an  hourly or contingency basis.  Based upon the credible testimony of both Tina Broder and Robert Gielchinsky, and to a lesser extent on Petersen's characterization of the arrangement in this case to the Bankruptcy trustee,  the Court finds that this case was taken on a contingency basis.  The only evidence presented by Petersen to suggest otherwise was his reference to excerpts from self-serving e-mails to Mr. Gielchinsky repeatedly asserting that the arrangement was hourly.  Mr. Petersen did not introduce the un-excerpted e-mails in into evidence, nor did he supply the Court with any other evidence of an hourly fee arrangement.  He did not bring time records with him to the hearing, nor has he ever prepared a fee affidavit regarding his services.  Further, Ms. Broder testified that Petersen used written retainer agreements in other cases when he billed hourly.

The Plaintiffs argue that because there was a contingency fee agreement in this case, and Petersen voluntarily withdrew prior to the contingency occurring, Petersen is not entitled to recover his fees.

Case law in Florida establishes the rules regarding an attorney's entitlement to recover his or her fees under a contingency fee agreement where the attorney either withdraws or is

discharged prior to the occurrence of the contingency.   The courts distinguish between when an attorney voluntarily withdraws, and when the attorney is either discharged without cause, or the client's conduct makes withdrawal necessary.   When an attorney voluntarily withdraws from representation of a client before the contingency occurs,  the attorney forfeits all rights to compensation unless the client's conduct makes the attorney's continued performance either legally impossible or would cause the attorney to violate an ethical rule, in which case the attorney may be entitled to a fee when the contingency occurs.  Faro v. Romani, 641 So.2d 69 (Fla. 1994); Kay v. Home Depot, Inc., 623 So.2d 764 (Fla. 5th DCA 1993).

Petersen testified that a conflict arose in the Vibo case necessitating his withdrawal in the instant case.  Mr. Gielchinsky testified that the rift between attorney and client resulted from Petersen's refusal to sign off on the settlement agreement in the Vibo case. This is supported by the letter Petersen wrote to Defendant's counsel in the Vibo case advising that although he hoped he was not becoming adverse to his clients, he could not consent to the settlement. Although Mr. Gielchinsky testified that his wife filed a complaint with the Florida Bar in connection with the pool litigation, he did not file his own bar complaint until after Petersen withdrew from this case.

The Court finds that it was not the client's conduct which necessitated Mr. Petersen's withdrawal from representation in this case.  In fact, it was Petersen's obstructive behavior, adverse to his client's interest in the Vibo case, that created the conflict.  The credible evidence presented demonstrates that Petersen was disappointed with the settlement in Vibo, and sought to extract a better deal for himself from his client. Incredibly, Petersen was not satisfied with Mr. Gielchinsky's offer to modify the contingency agreement in that case to provide Petersen with 15% of revenue in addition to  the negotiated 15% of the cash recovery, and he demanded brand rights instead. Now, in this case, Petersen is demanding payment despite his withdrawal on the eve of trial, but he has presented no credible evidence substantiating the hourly fee agreement he contends is operative. Nor

has he provided the court with any documentation of the approximately $300,000.00 in fees to which he claims to be entitled.

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Motion to Strike Petersen's Notice of Charging Lien and Request for Jury Trial (DE 272) be GRANTED, the Motion of Charging Lienor Byron G. Petersen, P.A. to Compel Plaintiffs and Robert Gielchinsky to Disclose Terms of Settlement (DE 286) be DENIED, and the Second Request by Petersen for Evidentiary Hearing(s) on Charging Lien (DE 285) be DENIED AS MOOT.

The parties will have 10 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge.  Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 7th day of February, 2013.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
All Counsel of Record

11